UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MICHAEL PRYOR,

                            Plaintiff,           **FOURTH AMENDED COMPLAINT**

        -against-                                      Jury Trial

                                                      16 CV 8232 (VSB)

THE CITY OF NEW YORK,

                            Defendant.
------------------------------------------------------------------X

       Plaintiff MICHAEL PRYOR by and through his attorneys, Vik Pawar, and Robert Blossner, Esqs., respectfully alleges as follows:

## PRELIMINARY STATEMENT

       1.    Plaintiff brings this action for compensatory damages and attorney's fees pursuant to 42 U.S.C. §§1981, 1983 and 1988 and Title VI of the Civil Rights Act of 1964 for violations of his civil rights as secured by statutes and the United States Constitution.

## JURISDICTION

       2.    The action is brought pursuant to 42 U.S.C. §§1981, 1983 and 1988, and the Fourth, and Fourteenth Amendments to the United States and New York Constitutions.

       3.    Jurisdiction is found upon 28 U.S.C. §§1331 and 1343.

## VENUE

4. Venue is properly laid in the Southern District of New York under 28 U.S.C. § 1391(b), in that it is the District in which the claim arose.

## JURY DEMAND

5. Plaintiff respectfully demands a trial by jury of all issues in the matter pursuant to Fed. R. Civ. P. 38 (b).

## PARTIES

6. Plaintiff, an African-American, is a citizen of the United States, and at all relevant times was a resident of the County of Bronx, City and State of New York.

7. Defendant City of New York (hereinafter "City") was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York. The New York City Police Department ("NYPD") is a non-suable entity and therefore the City is sued on NYPD's behalf.

## FACTS

8. On September 30, 2013, around 8 p.m., plaintiff was inside a parking lot of a New York City Housing Authority ("NYCHA") building with his friend who resided in the NYCHA needed plaintiff's assistance with his vehicle that was legally parked.

9. Plaintiff's friend had requested plaintiff's assistance to help screw on license plates on his vehicle because he was physically unable to do so.

10. The parking lot was located in the vicinity of a NYCHA building around 157th street and St. Nicholas Avenue, where plaintiff's friend resided.

11. As plaintiff and his friend worked on the vehicle, P.O. Guzman and two other officers ("the officers") pulled up in their unmarked car and started questioning plaintiff and his friend.

12. Plaintiff and his friend both informed the officers that they had a legal right to be there, the friend was the rightful and legal owner of the vehicle, he lived in the NYCHA building and they had committed no crime.

13. Despite these perfectly justifiable and valid reasons, plaintiff was unlawfully stopped, frisked, searched, arrested and prosecuted for "trespassing."

14. The officers then transported plaintiff to the 33rd precinct with tightly cuffed handcuffs which restricted blood-flow, subjected to full strip-search and booked on charge of trespassing thus violating his rights to be free from unreasonable search and seizure and malicious prosecution.

15. Based on the falsity of the charges plaintiff spent more than 24 hours in custody and suffered a loss of liberty because he was unable to leave until he was released on his own recognizance ("ROR") by the judge.

16. Guzman drafted and his supervisor signed off on a criminal court complaint that was forwarded to the DA's office for plaintiff's prosecution. Plaintiff made repeated trips to the Court and was restricted in his liberty because failure to appear would result in an arrest warrant. During these law mandated court appearances Guzman and his supervisor never showed up to testify or otherwise support their fabricated

complaint against plaintiff. The false and fabricated charges against plaintiff were eventually dismissed on October 1, 2014.

### AS AND FOR A FIRST CAUSE OF ACTION
(Municipal Liability based on Violation of the Fourth Amendment and Substantive Due Process Clause of the Fourteenth Amendment)

17. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

18. The City through the NYPD has engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States and because the City was deliberately indifferent to the rights of individuals like plaintiffs. The City is aware that an individual NYPD officer would encounter a given situation like the one described in the complaint and would be forced to make a difficult choice of whether to effectuate police action or not. However, even though the City through the NYPD is aware that such an encounter would take place, they have been deliberately indifferent in failing to set measures into place to avoid wrongful choice/conduct that results in violation of the constitutional rights of individuals like plaintiffs. Despite being aware of these widespread actions by the NYPD (as alleged in the foregoing and following paragraphs) which have become a *de facto* policy with the full force of the law, NYPD failed to address them and that failure has constituted deliberate indifference.

19. Plaintiff sets forth three (3) separate and distinct violations that form his Municipal Liability claim: (a) unlawful stop, frisk and search and the ensuing post-arraignment deprivation of liberty through malicious prosecution, (b) arrests without probable cause for trespassing and the ensuing post-arraignment deprivation of liberty

through malicious prosecution, and (c) failure to enact a policy or training program that would hold officers accountable for wrongful and/or "quota based arrests" that unnecessarily causes deprivation of liberty for individuals like plaintiff who are maliciously prosecuted on a regular basis.

    (a) <u>Unlawful stop, search and frisk and the ensuing post-arraignment deprivation of liberty through malicious prosecution</u>

20. Plaintiff an African-American male was lawfully present at the premises when the officers stopped, searched and frisked him. Defendant City has failed to properly train individual defendants as to what constitutes a crime or probable cause to stop, frisk and search a person and initiate criminal proceedings against them.

21. Defendant City through the NYPD has engaged in routinely stopping, frisking and searching minorities and initiate criminal proceedings against them without probable cause simply because of their race.

22. In addition, the widespread lack of training, or disciplining the officers within the NYPD allows officers to walk away with impunity while at the same time causing constitutional injuries to individuals like plaintiff. Because of the lack of training on the law, individual defendants arrest and initiate criminal proceedings against innocent citizens like plaintiff.

23. The conduct of the NYPD relating to unlawful stop, frisks and search and the ensuing post-arraignment deprivation of liberty through malicious prosecution is not an uncommon event. The City has faced numerous lawsuits, complaints and notices that the NYPD engages in this type of behavior but has failed to curtail or address it through discipline or re-training the officers or simply being indifferent to the constitutional rights

by retaining the offending officers and hiring more officers that would be susceptible to engaging in unconstitutional conduct because of lack of adequate training.

24. In fact, Judge Scheindlin in *Floyd v. City of New York,* 813 F.Supp.2d 417, 422, (S.D.N.Y. 2011)[1], noted that "it is clear that the policing policies that the City has implemented over the past decade and a half have led to a dramatic increase in the number of pedestrian stops, to the point of now reaching 'almost 600,000 a year.' There is 'a disturbingly large racial disparity in who is victimized by these practices,' although the precise extent of the disparity and its causes are matters of dispute. This is not the first time the City of New York has been accused of racial profiling. In particular, a previous lawsuit before this Court, *Daniels v. City of New York,* was resolved through a settlement agreement requiring the City to adopt several remedial measures intended to reduce racial disparities in stops and frisks." Majority of the prosecution of these stops and arrests have been terminated in the arrestees' favor.

25. In another decision, the Judge noted that racial disparities "exist in the context of the NYPD's long history of biased stop, question, and frisk activity."

26. Due to the City's policies, the custom and practice of the NYPD officers and the lack of the City to implement (a) meaningful training materials, (b) adequate disciplinary measures, (c) additional supervision, (d) adequate hiring and retention procedures, when such implementation has been clearly warranted for over a decade, and an utter disregard to the Constitution, the City has been deliberately indifferent to the rights of its citizens like plaintiff. The foregoing failure to act or disregard a known occurrence that needed to be rectified, the City instead turned a blind-eye to these

---

[1] The *Floyd* decision is attached as Exhibit 1 and is incorporated into this complaint.

unconstitutional practices and was the proximate cause of the violation of individuals like plaintiff's substantive due process rights and plaintiff suffered injuries.

(b) <u>Trespassing arrests and the ensuing post-arraignment deprivation of liberty through malicious prosecution</u>

27. The aforementioned customs, policies, usages, practices, procedures and the rules of the NYPD which included arresting and prosecuting innocent individuals like the plaintiff who are lawfully present at the premises but yet charged and prosecuted with trespassing is the direct result of the City's lack of training, disciplining or implementing adequate measures that amount to deliberate indifference to individuals' substantive due process rights.

28. In addition, NYPD officers have faced several class action lawsuits dealing with arresting and prosecuting individuals for trespassing even though these individuals had a legal right to be at the subject location.

29. The NYPD has a custom or policy of unlawfully stopping and falsely arresting and prosecuting individuals for trespassing in and around New York City Housing Authority ("NYCHA") buildings and other locations and falsifying evidence in connection with those arrests, and the City inadequately screens, hires, trains, and supervises its employees for issues relating to such arrests and prosecution.

30. Plaintiff's arrest and prosecution is not an isolated incident. Thousands of individuals, like plaintiff, have been arrested and prosecuted for trespassing without probable cause and the City through the NYPD is aware of these unlawful practices through lawsuits, notices of claims, complaints filed with the NYPD's Internal Affairs Bureau, and the Civilian Complaint Review Board, and extensive media coverage, all of which show that many NYPD officers, including the officers defendants are insufficiently

trained in the investigation of purported trespassers, and the probable cause required for making trespass arrests and that they otherwise engage in a practice of falsification to ensure deprivation of liberty. Majority of these arrests are dismissed because the individuals are either tenants in the NYCHA building or invited guests.

31. One Court in this district has found that to be exactly the case. *See Davis v. City of N.Y.*, 959 F. Supp. 2d 324, 355 (S.D.N.Y. 2013) ("In sum, based on plaintiffs' documentary and testimonial evidence, as well as [an expert's] opinions, a reasonable juror could conclude that the City has engaged in a practice of making unconstitutional stops and arrests in and around NYCHA buildings as part of its trespass enforcement practices, and that this practice is sufficiently persistent and widespread to serve as a basis for *Monell* liability.[2]").

32. The City, at all relevant times, was aware that NYPD officers routinely commit constitutional violations such as those at issue here and has failed to change its policy and or is deliberately indifferent to its effect on innocent individuals.

33. Defendant City has been on notice that the NYPD officers have been engaged in these types of violations (to wit: arresting and prosecuting individuals for trespassing even when no offense has taken place). Despite being aware of this, the City through the NYPD failed to take corrective measures to train or re-train its officers so that further constitutional violations do not take place. As a result of the deliberate indifference, plaintiff suffered injuries.

---

[2] The *Davis* case is attached hereto as Exhibit 2 and incorporated into this complaint.

(c) <u>Failure to appear in court for the criminal prosecution that NYPD initiated</u>

34. The City through the NYPD has been deliberately indifferent to the rights of its citizens and although they could have, they fail to address the problem as outlined below which in turn leads to the violations of individuals like plaintiff's constitutional rights.

35. It is not uncommon that most of the criminal cases against individuals like plaintiff are protracted and or eventually dismissed because the officers who swore out the criminal court complaint do not show up for Court or otherwise follow up with the prosecution of the sworn complaint they file or because individuals like plaintiff show that they reside in the building and or were invited guests of the resident of the NYCHA building.[3]

36. In addition, it is not uncommon that NYPD officers to submit falsely sworn complaints arresting and prosecuting citizens without probable cause and then committing perjury and/or manufacturing evidence in an effort to initiate criminal prosecutions against individuals like plaintiff. *See Colon v. City of N.Y.*, No. 09 Civ. 8, 2009 WL 4263362, at *2 (E.D.N.Y. Nov. 25, 2009) ("Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration ... there is some

---

[3] Majority of the criminal actions against defendants (like now plaintiff) have been dismissed because the District Attorney could not move forward with the prosecution because of lack of evidence by the defendant officers or protracted prosecution based on the officer's failure to appear, cooperate or substantiate their initial complaint. This information is not conclusory because plaintiff's counsel have personal knowledge of such vast dismissals on these grounds.

evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.").

37. The City through the NYPD is aware that an officer would encounter a situation where he/she has to appear in Court to either substantiate their previous false statements or continue to disregard "must appears[4]" so that criminal prosecutions are either prolonged or eventually dismissed. The officer faces a difficult choice to further perjure him/herself and violate his/her oath to uphold the law or simply "disappear" from the criminal proceedings against individuals like plaintiff. Either of these difficult choices lead to the violation of constitutional rights and thus causing injuries to individuals like plaintiff.

38. Despite being aware of the difficult choices faced by the NYPD officers, the NYPD has failed to enact policies or implement safeguards for these officers who may very well may have made the arrest to reach a "quota" and do not wish innocent individuals to go to jail and refuse to appear in Court. Alternatively, the NYPD lacks a policy in ensuring that individual officers follow-up for court appearances for the criminal charges they have filed against individuals like plaintiff to ensure that plaintiff and others like him do not have to repeatedly come to court and have the case either adjourned or dismissed because the individual officers fail to follow up on their "criminal court complaint."

39. These deliberate indifference acts by the City through the NYPD and the existence of policy and custom and practice that leads to violation of constitutional rights

---

[4] "Must appears" are notifications to arresting/prosecuting officer's command that they must appear at the Criminal Court to be ready for trial or hearing to support the claims made in the arrest and criminal prosecuting documents.

of plaintiffs and is the proximate cause of injuries suffered by plaintiff as outlined throughout this complaint.

## AS AND FOR A SECOND CAUSE OF ACTION
(Municipal Liability Based on the Equal Protection Clause of the Fourteenth Amendment)

40. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

41. Plaintiff is an African-American male and therefore a minority.

42. Plaintiff was a guest of a resident of the NYCHA building when he was arrested and eventually prosecuted.

43. Plaintiff was denied Equal Protection because of the City's racially discriminatory trespass enforcement practices and as outlined in *Davis v. City of New York*. (Exhibit 2).

44. Plaintiff fears that if he visited his friends in NYCHA building he would be arrested and prosecuted for trespassing even though he had a lawful reason to be there.

45. Plaintiff was targeted solely because of his race because tens and thousands of arrests for trespassing have been of minorities and the NYPD arrests and prosecution for trespassing disproportionately consists of minorities. See Exhibit 1 and 2.

46. As a result, plaintiff has been denied Equal Protection by the City's discriminatory practice and he suffered violation of his Due Process rights.

## AS AND FOR A THIRD CAUSE OF ACTION
(Municipal Liability Based on discrimination under 42 U.S.C. 1981)

47. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

48. Plaintiff's friend was a resident of the NYCHA building at the time of the

alleged incident.

49. Plaintiff's friend had the right to enjoyment of all the benefits that came associated with his contractual relationship with the NYCHA.

50. Similarly, plaintiff also had a right to the benefits that flowed from his relationship with his friend.

51. However, because of the City's discriminatory trespass enforcement policies, plaintiff was unable to enjoy the benefits and privileges of the contractual relationship.

52. This impairment of rights violated plaintiff's constitutional protections under Section 1981 and he suffered injuries.

### AS AND FOR A FOURTH CAUSE OF ACTION
(Municipal Liability Based on Violation of Title VI of the Civil Rights Act of 1964)

53. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54. Defendant City is the beneficiary and recipient of federal assistance.

55. Plaintiff was unable to enjoy the benefits bestowed upon his friend (a NYCHA resident) and has been chilled in his rights to participate and freely move about as a guest due to the City's consistent unlawful and discriminatory enforcements of the trespassing policies.

56. As a result, plaintiff's rights under Title VI of the Civil Rights Act were violated.

**WHEREFORE**, Plaintiff demands judgment and prays for the following relief, jointly and severally, against the defendants:

(A) full and fair compensatory damages as determined by a jury:

(B) reasonable attorney's fees and the costs, expenses and disbursements of this action; and

(C) such other and further relief as appears just and proper.

Dated: New York, New York
       November 27, 2017

                                              PAWAR LAW GROUP, P.C.
                                              20 Vesey Street, Suite 1210
                                              New York, New York 10007
                                              (212) 571-0805

                                              By: _____
                                                  Vik Pawar, Esq. (VP9101)
                                                  Robert Blossner, Esq. (RB0526)
                                                  *Attorneys for Plaintiff*